We'll turn to 24-2133, Aguila v. JPMorgan Chase & Co. We're going to do something a little bit different. We're going to ask Councilor of the Appellate of JPMorgan Chase to come up first. It's a little weird. But just for one question, one question, literally one question, and then we're going to reset and we're going to go back to how we would normally start, okay? So is Mr. Metlitsky? Metlitsky. Metlitsky. Yes. I have one question. Literally, it is one question, yes or no. If you're able to answer, great. If you're not able to answer, that's also fine. But after this question, we're going to go back, so we're not going to have a lot of back and forth now. And the question is, are you in a position to represent yes or no? Does your client have possession, custody, or control of any of the documents that are the subject of the subpoena in question? Yes. And we represented that below. And I can... No, well, you didn't. You said the question that was posed to you below was do you have, and the consistent response is we don't have. Right. And I just, I'm going to ask the question, just to be clear, there's no ambiguity. Does your client have possession, custody, or control of any of the documents subject to the subpoena? It does not. Okay. That's all I needed. And I can explain when I stand back up. That's the literal only question I wanted to ask, and then I think everyone's going to debate whether that has any meaning, what the consequences of that representation may be, but I just wanted to get that out of the way. So. Thank you, Your Honor, and may it please the Court, Chris Michel for Appellant Aguila. The District Court found, and J.P. Morgan does not seriously contest that Aguila met all the requirements expressly stated by Section 1782. The question here is whether the statute, either directly or through the federal rules of civil procedure, further requires the discovery applicant to carry the initial burden of establishing that the respondent has possession, custody, or control. So you can get there. I understand the burden shifting or the question of who bears the burden of proving what, but given the fact that we now have an unambiguous representation on the record to the Court from your opposing counsel, and I understand your argument in the brief that it was not that representation, it was neither requested nor made below, that the question was always does your client have, which I think could be read to mean does your client have possession of the documents? And I think that was a fair point made by your side. But here we have a representation covering custody and control, that the client has no possession, custody, or control of the documents. Could you address, assuming that we will accept that as a representation of counsel that would be subject to contempt sanctions if it were wrong, or if it were made without any belief as to whether there was an adequate factual basis for such a representation, where does that leave you? Sure. I think it leaves us at the bare minimum with a remand to the District Court where we could attempt to carry our burden if you accept that the burden has shifted back to us. I would, however, take a step back and say, although I respect Mr. Bedlitsky's representation this morning, the Second Circuit is not the place that the Federal Rules of Civil Procedure or Section 1782 anticipate this representation occurring. Well, if it came. We have it. It's on the record now. It was made before us. And I trust it was not, would not have been made lightly or, again, without a factual basis. And again, if it somehow turned out not to be, then there would be other prices to pay, I suppose. Right. But let's just assume for the sake of argument that it is a basis that we can consider. If we were to remand, I guess the question is, what would you propose that you would do on remand to, I suppose, disprove that representation? And given the fact that there was a lot of back and forth, and your side did put forth computer, I don't know what you want to call it, expert testimony, but this computer analysis, this forensic analysis, in an attempt to show that they did have possession and custodial control, why wouldn't this just be a do-over of something that already, that a fight that was already fought? Right. A couple of points in response, Your Honor. First, I think we would want to know more, either today or on remand, about what kind of search J.P. Morgan conducted in order to reach the representation that Mr. Metlitsky has made today. If you look at, for example, the court's decision in the Stadwerkey-Frankford case, this is an opinion from Judge Furman that both sides cite, and he walks through how this process is supposed to work. If there's a 1782 application served, then control is contested by the recipient of the application. And if you read that opinion, it outlines what kind of representations were made by the respondent there. It talks about the search it conducted, which subsidiaries it inquired to. My understanding of your opponent is they said there's no search to be had because we don't have any such documents. So it sounds to me like the theory on which you would prevail, I guess, unless they're lying and they actually do have actual physical possession of all kinds of documents, even though they represent they literally have custody of none, that they are simply a shell corporation that exists to own other companies, then it seems like you would be reduced to arguing about control. The custody thing sounds like just a factual representation. And they have not said, well, we did a search, we haven't found these things. They're like, no, no, no, we have zero. We literally have zero. I can search zero and I can tell you whatever you ask me, we don't have it because we have zero. So then if that's true, don't we devolve into simply the control analysis? I do. Or is there more beyond that? Would you literally also test that we have zero? I'm not understanding you with that. I think control would be the focus of our argument on remand. And we point out in our reply brief, for example, that the Bank Holding Company Act, and we just heard from California on this issue, establishes that a bank has control over its immediate subsidiary. In this case, that's JP Morgan North America. That was the entity that our forensic analysis established was involved in the recordings and the money in Brazil. Well, I get the computer stuff. Would your position, therefore, be that if we accepted your view as bank holding companies or somehow special, or at least satisfy the test of control, would that mean that any time any JP Morgan subsidiary gets sued anywhere in the world, you can always go here to New York with a 1782 subpoena to the corporate parent? And would that also be true for, I don't know, any number of other banks that are headquartered in New York? And if not, why not? Right. No, that is not our position for several reasons. I'll highlight two. One, as I just indicated, it's the, our Bank Holding Company Act argument is focused on the immediate subsidiary, JP Morgan North America. That's an American company. That's not the Brazilian subsidiary, which has been the issue in a lot of the other cases about going all the way down the corporate ladder. So you're saying you can only go one step down the chain with your bank holding company? Correct. And the other point, critically, is that we have allegations in this case, and evidence in this case, that that entity was involved in the transaction. This is not like the law firm cases or the bank cases where you're looking for a customer's record or something like that. But in terms of the evidence, and I looked at Mr. Machado's report, your expert, it's page 8, 519 of the record, the conclusions of his examination is that using rigorous digital forensics, and he looked at emails. Email exchanges between Petrobras in Brazil and Aguila, not Aguila, Petrobras and JP Morgan Chase. The problem is, that I see in this, and correct me if I'm wrong, is that it says, our analysis revealed evidence proving that the emails in question were transmitted from servers owned by JPM Chase. It doesn't say JPM Chase NA, it just says JPM Chase. Do you think that that was part of the issue that led the court below to say, hey, you haven't shown, regardless of whether it's your obligation or theirs, but you haven't shown that they were actually in possession? Or control? Control seems to be the bigger issue here.  I do think, back to Judge Nardini's question, control is the central issue here. I think with respect, the fact that the report refers to JP Morgan maybe is ambiguous, but I think the further discussion revealed that it was JP Morgan North America. Of course, JP Morgan is the entity that we've subpoenaed here, so that would be enough if that part of the report were credited. Hang on, just to keep on Judge Kahn's point, and I guess I'm looking at page 509, the domain jpmchase.net belongs to an organization called JP Morgan Chase Bank National Association, right? Right. Where do you go from there? I'm still not sure I understand the chain that flows from that. Sure. I mean, maybe it's . . . Who owns what? The National Association, do they own the Brazilian company? I'll let Mr. Medlitsky explain the corporate hierarchy.  My understanding is that the Brazilian subsidiary is an indirect subsidiary of JP Morgan and . . . JP Morgan is a name we keep throwing around. I guess it's a short form for all these corporate entities that have the name JP Morgan in them. Here's how I understand it in brief. There's JP Morgan, the holding company. I think that's the highest level entity within the corporation. And that's the one that you've subpoenaed? That's the entity that we've subpoenaed. Okay. Critically . . . And then what's the relationship to N.A.? I think that's right underneath it. I think that's . . . And is the Brazilian underneath this one? I don't . . . Or is it coming down the other direction? I think N.A. is North America, and Brazil's got to be South America, so I think it's under . . . I thought N.A. is National Association. That may be National Association. I think that that is further removed . . . Well, it seems like it matters, though, because if you're saying that you can go one level down with control, but now you're saying there's this whole web, and we've only traced it to this branch over here . . .  Then I don't see how you then trace it and say, well, anybody who's in this org chart somehow with a line connecting them . . . Right. It's all control because who knows anyway? Right. So this is an important point. I think this goes to your earlier question about how this is not going to open the floodgates to every level of every bank coming into this court. The allegations in this case, as I was discussing with Judge Kahn, indicate that J.P. Morgan N.A. was involved in the discussions in Brazil . . . Could you have . . . Not by virtue of . . . Could you have subpoenaed J.P. Morgan Chase Bank N.A. directly? I think . . . So, then the issue becomes, do they have control of these documents via the corporate structure over J.P. Morgan Chase Bank N.A.? But, could you have issued the subpoena, and presumably they know of your interest, so there should be no spoliation . . . because they're on notice that there's a request for these e-mails. Could you just subpoena N.A. and get the documents from them? I think we probably could, and if we did, I think we should get the documents. But, I don't think ultimately that changes the equation because the ultimate J.P. Morgan entity that we did subpoena still has control. I'd just point out the definition of control. I think this is helpful to the inquiry. This is on S.P.A. 7 of the district court's opinion, is practical ability or legal right to obtain. And here, I think there at a minimum have to be further proceedings in the district court to conduct that inquiry . . . while the district court's opinion rested on what we submit as a legal error. Okay. Why don't we hear from Mr. Vitlitsky again. Welcome back. Thank you. Please. So, I just want to elaborate on where we started here. I don't think it's right that we did not assert that we lack control below. As Your Honor pointed out . . . Give us a literal page. Sure. So, our motion to quash A350 to 351. A350? To 351, or our opposition and objections to the R&R 840 . . . Just give us A350. Yeah, 350 to 351 or 845. We'll start there. Just point us to the lines. Sure. And, what I'm getting at here is . . . I didn't see that. Yeah, what I'm getting at here . . . That's not to say it's not here. I don't see it on 350 to 351. If you show us what line . . . Yeah. . . . you're saying that you represented to the district court that your company had neither possession, custody, or control, as opposed to . . . Yeah. . . . a different argument, which is saying they haven't shown that we have possession. No, so . . . Just give me a line. It starts in the paragraph that says courts have dutifully applied this requirement, and it goes through the next two paragraphs. And, if I could just . . . Yeah, show me. Yeah, if I could just explain what the argument . . . Yeah, so if I could just explain what the argument was, then I can . . . No, no, start it the other way. First point is, you just represented that you said this to the district court. Yeah, so we said . . . I don't see where you said it to the district court. So, the Seventh Circuit, for example, has held that 1782 does not impose on a domestic parent corporation an obligation to fetch documents from . . . So, is that . . . is the answer to Judge Nardini's question, no, you don't say it on 350 to 351? No, no, what we're saying is . . . Well . . . It's okay if it's not there. No, I just want to explain the point that I'm trying to make, which is that . . . No, hang on. It's not a factual . . . We're getting ahead of ourselves. Sure. You just came up here and just represented, we told the district court this. Right. I want to see where you said it, not how you made legal arguments from which you hope that the district court should have extrapolated that the thrust of your argument was that. Well, we didn't make a factual representation because control in this context is not a factual question. It's a legal question about the control of . . .  Yeah, possession is factual. Well, I don't know that it is. I mean, you can argue legally what's possession and what's not. Like, oh, I don't have it in my file cabinet. I have it in my car. Well, that's constructive possession when we talk about firearms. There's a legal and a factual component of all these. Right, and in this case, it was fact. We made the point that we didn't possess the documents, so . . . Let me just say this. Yeah. I understand if you're going to tell us we argued in the district court that legally they can't show we have control over whatever. Right. But I don't say were you represented to the district court. We don't have control over this subsidiary. So, we represented the first thing. Just to be clear, we represented the legal point that under the precedent of the southern district, they cannot demonstrate control, and that's the representation . . . Or have not. Well, both. Well, no. I mean, cannot and have not. You're the one pointing us to pages in the appendix. Because . . . I want to make sure that if you're representing that you said that they cannot, where did it say that? Because I see you talking about, you know, other decisions by Judge Code or other . . .  Judge Nathan, but . . . Right, because . . . Then you just say, therefore, deny their petition. Well, no, this is . . . Which you say, we don't have control. So, we don't have control is a legal argument. Again, it's not a factual representation. Yeah, but where did you say that? That is what we're saying in these paragraphs and in the similar paragraphs in the . . . And yet, you can't point me to language. Well, no, I mean . . . If you say, look, I can't point you to a sentence that says it, but I want you to read two pages, and I want you to distill the essence in your mind, because if one looks in one's heart, you will see what our point was. But that's a different argument from saying page 350, line 8, I said we don't have control. You never said it. Your Honor, we said that we don't possess the documents factually . . . That I say over and over that you said. And that our subsidiaries do. And then we said that under the law of the district, that they don't appeal, we don't have control. There's no law of the district. In the district, in the . . . There's no law of the district. District courts don't bind each other. No, I'm sorry, under the . . . You're saying a number of district courts have held X. There's no law . . . Well, that was our argument. We were saying that Judge Codal should agree with those district courts, and Judge Codal did agree with those district courts. And they don't appeal the rule first announced in Liverpool by Judge Nathan, then by Judge Cote, by Judge Codal, by Judge Schofield, by Judge Etkin. They all held that appearance of . . . They're all wrong. They might have been all wrong, but they don't . . . That's our job, right? Absolutely, but they don't appeal that. They didn't raise that issue on appeal. The question of the parent-subsidiary relationship and how that applies to the discovery principle of control, the first time . . . They are now talking about the Bank Holding Company Act. The first time that it's ever been raised in this case is in the reply brief on appeal. Yeah, but it was raised in the district court before it got to us. Assume for the sake of argument. It was not. Assume for the sake of argument it's preserved, and we've got to figure out the answer. The Bank Holding Company Act? That was never mentioned in the district court. Assume we've got to figure it out. Okay, sure. So, if the court were to reach that question under the Bank Holding Company Act, which, again, was never raised until the reply brief on appeal, it's a non sequitur. So, what they're pointing to under the Bank Holding Company Act is a provision that says that a bank holding company is a company that controls a bank, like a national bank, right? But that is not a principle of discovery. It has nothing to do with parent-subsidiary relationships, the corporate form, veil-piercing, or any of that. It's talking about ownership, right? And you know that from the very next subsection. They're citing 12 U.S.C. 1841a1. Section a2 tells you what control means. And the first example is you own 25 percent or more of the bank. The second example is you have a way of controlling how directors are elected. Let me ask you this. If you agree that you didn't tell the court below in so many words, factually I think is what you called it, you told the court legally, inferentially through your legal argument, that you were neither in possession or control of these documents. And you represent that to this court this morning. What's the big deal about a remand and just showing that to the district court because that wasn't presented? Well, Your Honor, first of all, I disagree that it wasn't presented because, again, what I'm representing is a legal point. It's not a factual point. Control is a legal point in this case. Well, what if we disagree with you and we think it's both a legal and a factual question? What's the problem with it going back? And then you can prove what you just affirmatively represented to this court. We don't have to prove anything. They agree that the ultimate burden is on them to prove possession, custody, and control. Right? We just have to assert. Yeah, but the word ultimate. Yeah. Well, you added here that they claim that at this stage they don't have this burden. And we're at this stage where we are. No, Your Honor. They never made this argument below ever. They never suggested it. I just said they're making this argument. Let's assume we're going to entertain their argument. Let's assume it. That's fine. We disagree with the argument, and I can explain why. But if they had made this argument below, for example, that we had to file a formal objection, we could have just done that. They never asked us to do any of these things. All they said was we are taking on the burden. Well, they never asked because you filed a motion of caution. They opposed it, right? Yeah, they opposed it, right. And their basis for opposing was that we have proven possession, custody, or control. They never suggested that we had to make a representation before the burden shifted to them. They just took on the burden. Well, yeah, they don't want to accept your representation. I think they think that representation doesn't count. Can I just ask you something? You've been saying that control is not a factual question. It's a legal question, right? So does that mean that your representation to us, that your client does not control the documents, doesn't really have any value in our eyes? Because that's just, in your view, a legal argument that we can accept or we can reject. But it's not a factual representation, and therefore there's really no weight we give to you. That would be like if somebody comes in and says I represent that my client's sentence was too long in a criminal case. That's not a representation we accept or reject. It's just a legal argument. So is your argument, is what you said to us at the beginning about your client not having control, your view is that that's not a factual representation, that's a legal representation? In this case, yes, because the factual representation is that the subsidiary, a subsidiary has these documents. And then you have to figure out, does that mean that the subject of the subpoena, the holding company, has control? So you're willing to tell us that factually the subsidiary has the documents, but in response to our question about whether you are standing here representing the parent of the subsidiary, you can't answer to us factually whether you have control over, because the law isn't just physical possession. It's possession and control. So you're saying you can't represent to us factually that you're, as the representative of the parent company, you have factual control, control of the documents factually. Or lack thereof. Meaning, or lack thereof, that you could call somebody and say produce this. Well, so under the law of, under the law that was applied below that is not appealed. I'm not asking the legal question. I understand that. I'm asking the factual question. Right. I'm not prepared to answer the court's question about, from a factual perspective, whether you have control of the subsidiary. We do not have, I can't answer that question in that way because I don't think it's a factual question. I think whether the parent has control of the subsidiary is a legal question that was litigated below, and they have not appealed the standard that the court applied. Well, that's fair enough. I think we understand. That's helpful because it just gives us the contours of what you understood and what you meant to say when you made that representation of the court. That you were interpreting and applying the law as you understand it to be. So that's fair. Okay. Why don't we see if we can hear from counsel for the appellant who's reserved a couple minutes for rebuttal. Let's see where we are. Thank you, Your Honor. A couple of quick points in rebuttal. First, on the preservation issue, there's lots of citations, but I think the best one is A316 to 317, where we say in our first objection to the first magistrate's order that we do not have a burden under Section 1782. I think that's clearly preserved. It was also said at the hearing. It was also said in the letter. It was clearly on the radar for the district court. That's before the 1782 application is granted to the extent the request is issued, and then we move into federal rules of civil procedure territory, right? That's right. But we incorporated our earlier objections. Well, but that was an objection that under 1782 you didn't have a specific obligation as a threshold matter. But once the request is issued, we move into FRCP area. And there was no argument that under Rule 34, Rule 37, whichever rule of discovery, you didn't have a threshold obligation, right? Well, our argument all along was that we did not have a threshold obligation. I agree that the federal rules of civil procedure enter in by cross-reference through 1782, but our position all along, I think this was quite clear, was that we didn't have the initial burden. I mean, if you read our opening brief, I think there are, we point out seven different times where we teed up this question for J.P. Morgan and it didn't answer it. And is your objection, your argument that it's incorporated into the second objection is at A825? Is that your claim that that's the incorporation? Incorporation of our earlier objections, yes. But I don't think you have to rely on that alone. I think at the hearing itself, this objection was clearly made in the letter that the district court invited after the hearing. It was clearly made. The district court, of course, decided the issue. And this is a legal issue before this court, even if you were to find forfeiture, which I don't think you should, that the court should decide. I think if I make two other very quick points, you know, we certainly do challenge and appeal, you know, the portion of the district court decisions that my friend cited to the degree that they say there is an initial burden on the proponent of discovery. I actually think there's a lot in those decisions that helps our argument, as I suggested earlier. In some ways, those decisions do require the other side, the recipient, to make a representation and then allow that to be tested. That's what we were denied in the district court. It's true that we had the representation at the beginning of the argument this morning, but I think it would be awfully difficult to decide the entire case on that grounds. And the last thing I want to make sure I leave Judge Nardini with is that we are not making an argument that JPMorgan Chase, the holding company, directly controls the Brazilian subsidiary and that, you know, for that reason alone, we have control. We have a much narrower argument, which is that the JPMorgan N.A. was involved in the events in Brazil and that JPMorgan holding company controls JPMorgan N.A. And that's the argument we want to present to the district court, not a much broader argument. And that's the argument you want to present with respect to control? With respect to control, yes. Okay, so that's the argument you want to present with respect to control. And you've said this, I'm sure. I want to just make sure I understand it. If we were to remand, are you also looking to make an argument in the district court with respect to possession or not? I don't want to relinquish any arguments today. No, just one way or the other. I don't really care what the answer is. I think our arguments would focus on the control issue. So I need a yes or a no. Okay. You can reserve your right, but if you are, I want to know, if you're reserving the right to talk about possession, if there were a remand, or are you saying you abandoned it? I think I'd reserve the right to argue it, but I think we would focus on control. And I would point out that a critical part of the definition of control is practical ability to obtain the documents. Okay, fair enough.  I think we have everyone's arguments. Thank you both very much. We will reserve decision.